## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| In re: | |
| | Case No. 22-12059 (KHT) |
| 5280 AURARIA, LLC | |
| EIN:  84-3301286, | Chapter 11 |
| | |
| Debtor. | |

---

## MODIFIED DISCLOSURE STATEMENT TO ACCOMPANY
## DEBTOR'S FIRST PLAN OF REORGANIZATION

---

  5280 Auraria, LLC (the "**Debtor**") in the above-referenced chapter 11 case (the "**Case**") hereby submits this Modified Disclosure Statement (the "**Disclosure Statement**") pursuant to 11 U.S.C. § 1125 to accompany its Plan of Reorganization (Docket No. 201) (the "**Plan**") filed on October 17, 2022. Capitalized terms contained in this Disclosure Statement that are defined in the Plan have the same meaning as set forth in the Plan. All exhibits to the Plan are incorporated into and are a part of the Plan and Disclosure Statement as if set forth in full herein.

  This Disclosure Statement is being provided to all creditors of the Debtor. This Disclosure Statement is subject to final approval pursuant to section 1125 of the Bankruptcy Code by the United States Bankruptcy Court for the District of Colorado as containing adequate information to enable creditors and Interest holders to determine whether to accept the Debtor's Plan.

**THE VOTING DEADLINE IS [_____], 2022**

**(UNLESS THE DEBTOR EXTENDS THE VOTING DEADLINE).**

**TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE DEBTOR'S COUNSEL, BROWNSTEIN HYATT FARBER SCHRECK, LLP AT 410 17TH STREET, SUITE 2200, DENVER, CO 80202, MUST <u>ACTUALLY</u> RECEIVE YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN, AND ANY EXHIBITS ATTACHED HERETO IS <u>HIGHLY SPECULATIVE</u>, AND SUCH DOCUMENTS SHOULD NOT BE RELIED UPON IN MAKING INVESTMENT DECISIONS WITH RESPECT TO THE DEBTOR.**

**<u>PRESERVATION OF AVOIDANCE ACTIONS UNDER THE PLAN:</u>**

IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, CREDITORS AND INTEREST HOLDERS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTOR WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION (EXCEPT RELEASED CLAIMS) AND THAT THE PLAN AUTHORIZES THE DEBTOR  TO PROSECUTE THE SAME.

**IMPORTANT INFORMATION FOR YOU TO READ:**

**THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR ITS PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE TO HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.**

**THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.**

**THIS DISCLOSURE STATEMENT CONTAINS "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THAT THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT**

24950317

COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTOR'S POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. RATHER, HOLDERS OF CLAIMS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE DEBTOR MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR

24950317

STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT. THE DEBTOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTOR HAS USED ITS REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE DEBTOR IS GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED. THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VII HEREIN.

24950317

# I.  INTRODUCTION

## A.  Overview

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows the Debtor to retain its assets during the administration of the Chapter 11 case as a debtor-in-possession. Following confirmation of the Plan, Chapter 11 allows the Debtor to retain its assets as a reorganized debtor or as otherwise provided in the Plan. If the Plan is approved by the Court, the Plan is the permanent restructuring of the Debtor's financial obligations. The Plan also provides a means through which the Debtor will restructure or repay its obligations.

The Debtor's Plan provides for the renovation and sale of the principal asset of the Debtor, the Auraria Student Lofts, under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, once the Debtor's assets have been liquidated, the Debtor shall distribute the net proceeds to creditors in conformity with the Bankruptcy Code.

The Debtor believes that the Plan represents the best alternative for providing the maximum value for creditors. The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

## B.  Sources of Information for Disclosure Statement; Financial Reporting.

Substantially all the factual information utilized in this Disclosure Statement was obtained from information provided by the Debtor's approved professionals, the Debtor's management, and the Debtor's books, records, Statement of Financial Affairs, schedules, and the claims register.

# II.  GENERAL INFORMATION ABOUT THE DEBTOR

## A.  Debtor's History and Business Interests

### 1.  The Debtor's Structure and Real Property

The Debtor is organized as a Delaware limited liability company. Nelson Partners, LLC, a Utah limited liability company ("**Nelson Partners**"), is the Member and Manager of the Debtor, and Patrick Nelson owns the equity interests in Nelson Partners.

The Debtor owns certain real property located at 1051 14th Street, Denver, Colorado 80202 and 1405 Curtis Street, Denver, Colorado 80202 (the "**Real Property**," also known as the "**Auraria Student Lofts**"). The Auraria Student Lofts provides off-campus student housing apartments near the University of Colorado – Denver, Metropolitan State University, Denver Community College, and the University of Denver. The Property has 125 rental units with 438 beds, occupying 153,860 square feet in downtown Denver.

The Debtor's only assets are the Real Property and fixtures and leasing office equipment at the Property. Other than the secured debts described more fully herein, the Debtor's debts consist of legal fees, ordinary course trade debt, and similar industry standard obligations.

24950317

### 2.  Nelson Partners and the Acquisition of the Real Property

Nelson Partners is a nationally recognized real estate investment firm specializing in developing, acquiring, and managing high quality purpose-built off-campus student housing properties throughout the United States. Currently, Nelson Partners (through subsidiaries) owns or operates 18 student housing projects in multiple states. Across all projects, Nelson Partners works with approximately 1,800 investors at any given time. On particular projects, Nelson Partners provides management, oversees construction and acquisition, and facilitates so-called 1031 exchanges of real estate.

The Debtor acquired the Real Property in the fall of 2019 for an acquisition price of approximately $60 million, inclusive of transaction costs. The acquisition was financed through a combination of debt and equity, in particular a loan in the original principal amount of $46,500,000 made by Cantor Commercial Real Estate Lending, L.P. ("**Cantor**"), as lender. The Cantor Loan was secured by a first priority deed of trust on the Real Property. At this time, the Debtor secured a junior, "mezzanine" loan in the original principal amount of $5.5 million from Auraria Stub, LLC ("**Auraria Stub**"), as lender. The Auraria Stub loan is secured by a second priority deed of trust on the Real Property and by a pledge of 25% of the equity interests in the Debtor, which is held by Nelson Partners. Nelson Partners further contributed an equity investment of $8.1 million.

The general structure of the financing has certain features found in many transactions involving commercial mortgage-backed securities. Among these are presence of "special purpose entity" provisions restricting the Debtor's general business to ownership and operation of the Real Property and limited transactions with affiliates; delivery of "recourse" or "bad boy" guaranty agreements intended to deter the Debtor from resisting collection of secured indebtedness; and a provision in the Debtor's LLC Operating Agreement of an "independent manager," with terms purporting to prohibit a voluntary bankruptcy petition without the affirmative assent of the independent manager.

### 3.  The COVID-19 Pandemic and the Search for a New Lender

In its initial operation under management of Nelson Partners, the Auraria Student Lofts enjoyed immediate success. In January 2020, student occupancy was strong. The Real Property was generating cash flow for debt service. The Debtor had planned on renovating and improving the Real Property to make it more attractive to tenants so that the Real Property could fetch materially higher rents. The resulting improvement to cash flow would dramatically increase the value of the Real Property. The Cantor Loan contemplated that such renovations would occur over a two-year period that would coincide with the scheduled maturity of the Cantor Loan.

Between the fall of 2019 and the fall of 2020, the Debtor was able to renovate 60% of the units. The COVID-19 pandemic, however, had a dramatic impact on the Debtor's plans. The schools served by the Real Property had, in some cases, reduced their own dormitory capacity and needed availability. To maintain relationships, the Debtor permitted more leasing than planned in the fall of 2020, which thereby required a pause in further renovations.

During this time, the Debtor did not default on the Cantor Loan. The Debtor made each periodic payment when due. Although the Debtor was able to make loan payments, the Cantor Loan was set to mature on December 9, 2021. The Cantor Loan provided the right to extend the initial maturity date if

6

the Debtor's financial performance hit or exceeded certain metrics. Due to the depressed performance of the Real Property resulting from pandemic restrictions and the delay in renovations, it became apparent that the Debtor would not hit these metrics.

These circumstances rendered the Debtor completely dependent on securing a new lender to pay off the Cantor Loan. A new lender would have to be willing to lend against student housing, knowing that the Real Property had been severely impacted by pandemic-driven shutdowns of school campuses, relying instead upon the substantial equity cushion created by the Debtor in the Real Property and the financial projections prepared by the Debtor.

Fortress Credit Corporation ("**Fortress**") presented itself to the Debtor as the best refinancing source. After discussions with the Debtor, Fortress negotiated, signed, and delivered a Term Sheet, dated May 18, 2021. The Term Sheet set forth the terms of a contemplated loan from Fortress in the amount of $56,205,202.00, the proceeds of which would be sufficient to repay both the Cantor Loan, a second mezzanine loan, and to fund certain deferred maintenance and improvements.

The Term Sheet contained specific provisions for the amount of the loan, use of proceeds, maturity, security, interest rate, extension of maturity, reporting and other matters. The terms appeared acceptable to the Debtor. The Term Sheet also required that the Debtor pay Fortress a $100,000.00 application fee. Consistent with the Term Sheet and in reliance upon the expectations created thereby, the Debtor paid $100,000.00 to Fortress.

Unbeknownst to the Debtor, Fortress at some point commenced negotiations to acquire the Cantor Loan. Fortress acquired the Cantor Loan through an entity it created called DB Auraria, LLC ("**DB Auraria**").[1] DB Auraria recorded an Assignment and Assumption Agreement in the real property records of Denver County indicating the Cantor Loan was purchased for $46 million.

Approximately one month thereafter, Fortress provided the Debtor with a payoff letter as of December 14, 2021, demanding $49,875,161.41. In other words, Fortress demanded almost $4 million more to pay off the loan than the amount if paid five weeks prior. The payoff figure of $49,875,161.41 was overstated and designed to prevent the Debtor from paying off the loan through an alternative source. On December 14, 2021, just five days after the loan matured, Fortress sent the Debtor a Notice of Default. By acquiring the Cantor Loan one month prior to maturity, Fortress calculated it would place the Debtor in a position to which it was vulnerable to its predations. Fortress disputes the Debtor's contentions and contends the claims are without merit.

### 4.  Appointment of the Receiver, Foreclosure, and the Filing of the Case

Notwithstanding the Notice of Default, Fortress representatives assured the Debtor that they intended to work with the Debtor and encouraged the Debtor to rely upon Fortress for loan accommodations, rather than seeking third-party financing. In early January 2022, the parties negotiated and executed a Pre-Negotiation Agreement, in which Fortress represented its intent to engage in discussions regarding the Cantor Loan, which could be lengthy. There were no substantive discussions. Instead, within a few weeks, Fortress commenced a Public Trustee foreclosure and

---

[1] Together, DB Auraria, LLC and Fortress Credit Corporation are referred to as "**Fortress**."

24950317

separately filed and obtained the appointment of a receiver, thereby depriving the Debtor of any access to the rental revenues while increasing the costs it could append to any payoff.

On January 28, 2022, Fortress filed a Verified Complaint for *Ex Parte* Appointment of a Receiver in the District Court for the County of Denver ("**State Court**"), Case No. 2022CV30256. On January 31, 2022, Fortress filed its Verified Motion for Expedited and *Ex Parte* Appointment of Receiver in the State Court. Later that day, the Order for *Ex Parte* Appointment of Receiver was entered by the State Court. The State Court appointed Michael L. Staheli of Cordes & Company LLP as Receiver (the "**Receiver**"). The Receiver took possession of the Real Property on January 31, 2022. Pursuant to the Order Appointing Receiver, the Receiver engaged a property management company (Cardinal Group Management Midwest, LLC or "**Cardinal**") to assist the Receiver with operating and managing the Real Property.

The primary driver of the Debtor's bankruptcy filing was the foreclosure proceeding in Denver County District Court, Case No. 2022CV031030, filed by Fortress. The foreclosure sale date was set for June 9, 2022 at 10 a.m. The Debtor commenced this bankruptcy case on June 9, 2022, in order to prevent the foreclosure. Chapter 11 protection was necessary to preserve value for the benefit of all stakeholders and to regain the Debtor's ability to provide service to the student-tenants who reside at the Real Property.

## B. The Debtor's Liabilities

### 1. Administrative Claims

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §§ 503(b) or 1114(e)(2) of the Code and entitled to priority pursuant to § 507(a)(2) of the Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including the wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fees; and (c) all bankruptcy fees and charges assessed against the Estates under 28 U.S.C. § 1930.

Other than the administrative expenses for certain professionals, the Debtor has generally paid its administrative expenses in the ordinary course of business during the course of the Case and, therefore, does not believe there will be any other material Administrative Claims asserted against the Debtor's Estate.

### 2. Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8). At this time, the Debtor is not aware of any Tax Claims.

### 3. Mechanic's Lien of SNR Contractors & Associates

SNR Contractors & Associates ("**SNR**") has asserted a mechanic's lien and transcript of judgment for painting services rendered at 1051 14th Street. SNR filed a secured claim in the amount of $15,867.74 (Claim No. 7). SNR's claim is evidenced by a Statement of Lien recorded by the City

and County of Denver in accordance with Article 22 of Title 38 of the Colorado Revised Statutes and a Transcript of Judgment, dated January 25, 2022.

**4.    Mechanic's Lien of RediCarpet Sales of Colorado, Inc.**

RediCarpet Sales of Colorado, Inc. ("**RediCarpet**") has asserted a mechanic's lien and transcript of judgment for painting services rendered at 1051 14th Street. RediCarpet did not file a proof of claim.

**5.    Statutory Lien of 14th Street General Improvement District**

14th Street General Improvement District ("**GID**") has asserted a statutory lien for services performed and a bond obligation. GID asserts that this lien is secured by the Real Property and all assets of the Debtor. GID filed a secured claim (Claim No. 11) in the amount of $37,400.43.

**6.    Secured Claim of Fortress**

Fortress asserts a senior security interest in all the Debtor's assets pursuant to a Deed of Trust, Assignment of Leases and Rents, Assignment of Management Agreement, and Lockbox Deposit Account Control Agreement.

On November 20, 2019, the Debtor, as borrower, entered into a Loan Agreement (the "**Loan Agreement**") with Cantor. Under the Loan Agreement, Cantor agreed to loan the Debtor $46.5 million (the "**Loan**"). The Loan was made and evidenced by a Promissory Note from the Debtor, as obligor, to Cantor, as holder, dated November 20, 2019 for $24 million; and second Promissory Note from the Debtor, as obligor, to Cantor, as holder, dated November 20, 2019 for $22.5 million (the "**Promissory Notes**").

Fortress asserts that the Debtor's obligations under the Loan Agreement and Promissory Notes were secured by, without limitation, the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated November 20, 2019 (the "**Deed of Trust**") granted by the Debtor to the Public Trustee of the City and County of Denver for the benefit of Cantor.

The Debtor executed (i) an Assignment of Leases and Rents (the "**Assignment of Leases and Rents**"), dated November 20, 2019, from Debtor to Cantor, which was recorded with the Clerk and Recorder for the City and County of Denver on November 20, 2019 at Reception Number 2019164125, (ii) an assignment of Management Agreement and Subordination of Management Fees, dated November 20, 2019, from the Debtor to Cantor and consented to by Nelson Property Management, Inc., a California corporation ("**Assignment of Management Agreement**"), (iii) a Lockbox—Deposit Account Control Agreement, dated November 20, 2019 ("**Lockbox Deposit Account Control Agreement**"), between the Debtor and Cantor and KeyBank National Association (the "**Bank**"), (iv) a Cash Management Agreement, dated November 20, 2019, made by and among the Debtor, Cantor, and the Bank, and (v) a Collateral Assignment of Interest Rate Cap Agreement, dated November 20, 2019, made by the Debtor in favor of Cantor, and acknowledged by SMBC Capital Markets, Inc.

On or about November 5, 2021, Fortress asserts it became the holder of the Promissory Notes through an Assignment and Assumption Agreement. Fortress filed a proof of claim (Claim No. 10) in

24950317

which it asserts a claim of $51,112,064.77, of which $48,500,000.00 is secured and $2,612,064.77 is unsecured. The Debtor disputes Fortress' claim because it is grossly overstated and derived from predatory activities contrary to Fortress' representations and contractual obligations. The Debtor's Schedules and Plan reflect that the Debtor disputes this claim.

Additionally, the Debtor filed a claim objection (the "**Claim Objection**") (Docket No. 232) on November 6, 2022 in which the Debtor stated that Fortress' prepetition actions amount to a breach of contract, breach of the covenant of good faith and fair dealing under New York and Colorado Law. The Debtor has requested that the Court reduce Fortress' claim by an amount to be determined to account for Fortress' wrongful conduct. The Debtor has reserved its right to further object to Fortress' claim under 11 U.S.C. § 502(b) and any other grounds for disallowance should Fortress amended its claim to assert any postpetition interest or other postpetition costs and fees. Fortress filed a response (Docket No. 262) on December 7, 2022 in which it argued the Claim Objection should be overruled because the Debtor: (1) signed a release of all claims against Fortress, (2) contractually waived its right to bring money damage claims as offsets against the Fortress' claim, (3) has not established any claim for breach of good faith and fair dealing, (4) has not established the elements for a fraudulent inducement claim, and (5) has not established any breach of contract claim. The Claim Objection is pending before the Court.

### 7. Secured Claim of Auraria Stub LLC

Auraria Stub also asserts a security interest in the Real Property that is junior to Fortress' interest. Auraria Stub asserts it secured its junior "mezzanine" loan in the original principal amount of $5.5 million by a second priority deed of trust on the Real Property and by a pledge of 25% of the equity interests in the Debtor, held by Nelson Partners. Auraria Stub filed a proof of claim (Claim No. 9) asserting $7,262,607.21 as of the Petition Date.

### 8. Priority Unsecured Claims

The Debtor has several priority unsecured creditors that comprise Class 2 under the Plan. The holders of these Claims were former tenants who are owed a security deposit refund. These Claims are listed on Debtor's Schedule E/F.

### 9. Other General Unsecured Claims

The Debtor has several unsecured prepetition creditors that comprise Class 3 under the Plan, including Unsecured Claims that were scheduled and Claims for which the holder filed a proof of claim. The General Unsecured Claims asserted against the Debtor subject to the Debtor's further review and objection. The Debtor is continuing to review its books and records and reserves all rights to revise its Schedules or object to proofs of claim prior to confirmation of the Plan or in accordance with the Disputed Claim procedures set forth in the Plan.

## III.  SIGNIFICANT EVENTS IN CHAPTER 11 CASE

The Debtor has complied with all requirements of the Bankruptcy Code and of the Office of the U.S. Trustee, including establishing debtor-in-possession bank accounts and the filing of monthly operating reports. The Debtor is operating its business as debtor in possession pursuant to sections

10

24950317

1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in this Case.

### A.   Initial Relief

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 9, 2022 to stop the foreclosure of the Real Property.

In connection with the filing of its Chapter 11 Case, the Debtor filed an Application to Employ Brownstein Hyatt Farber Schreck, LLP ("**BHFS**") as bankruptcy counsel (Docket No. 14) and a Motion to Approve Retainer Paid to BHFS (Docket No. 72). The Court granted the BHFS Application on June 13, 2022 and the Retainer Motion on August 11, 2022 (Docket Nos. 16 and 97).

### B.   Motion to Excuse Turnover

On June 13, 2022, Fortress filed a Motion to Excuse Receiver's Compliance with 11 U.S.C. §§ 543(a) and (b) (the "**Motion to Excuse Turnover**") (Docket No. 15). The Debtor filed its Objection to the Motion to Excuse Turnover on June 27, 2022 (Docket No. 30). The Order and Notice of Preliminary Hearing (Docket No. 53) set a preliminary hearing for July 14, 2022. A Notice of Hearing on Discovery Dispute was entered on July 26, 2022 in which a hearing was set for July 27, 2022. Reports regarding the Discovery Dispute were due to the Court by 4 p.m. on July 26, 2022, for the hearing the next day. The Debtor filed its Motion to Present Witness Testimony by Video Conferencing on August 26, 2022. Fortress objected to that motion. After an evidentiary hearing, the Court denied the Motion to Excuse Turnover and ordered biweekly joint status reports on turnover on September 8, 2022 (Docket No. 130). The Debtor and the Receiver completed turnover of the Real Property to the Debtor on September 26, 2022. The Debtor is now in possession of the Real Property and is responsible for payment of operating expenses from October 1, 2022 going forward, subject to a limited number of payments made by the Receiver subject to a hold back budget.

### C.   Bar Date Motion

On August 31, 2022, the Debtor filed a motion to establish bar dates for filing proofs of claim in the Chapter 11 Case. Docket No. 114. On September 1, 2022, the Court entered an order establishing December 6, 2022 as the deadline for governmental units (as defined in § 101(27) of the Bankruptcy Code) to file proofs of claim and September 30, 2022 as the bar date with respect to all other proofs of claim. Docket No. 117.

### D.   SARE Motion and Designation

On June 29, 2022, Fortress filed a Motion for Determination of Single Asset Real Estate Case (the "**SARE Motion**") (Docket No. 32). On July 13, 2022, the Debtor filed its Objection to the SARE Motion (Docket No. 60). Fortress filed a Reply in Support of its SARE Motion on July 20, 2022 (Docket No. 68). The Court set a preliminary hearing for August 18, 2022 and an evidentiary hearing for September 15, 2022. In an effort to move the case forward, the Debtor came to an agreement with DB Auraria on the SARE designation. The Court granted the SARE Motion on September 15, 2022 (the "**SARE Order**") (Docket No. 142).

### E.   The Valuation and Adequate Protection Motions

24950317

On July 20, 2022, Fortress filed a Motion to Determine Value of Claims Secured by Lien on Property (the "**Valuation Motion**") (Docket No. 69). The Debtor filed its Objection to the Valuation Motion on August 3, 2022 (Docket No. 89). DB Auraria filed its Reply in Support of its Motion to Determine Value on August 10, 2022 (Docket No. 96). That same day, Fortress filed a Senior Lender's Motion for Adequate Protection (the "**Adequate Protection Motion**") (Docket No. 94). The Debtor filed its Objection to the Adequate Protection Motion on August 24, 2022 (Docket No. 102). Fortress filed its Reply in Support of its Motion for Adequate Protection on August 31, 2022 (Docket No. 113). The Valuation and Adequate Protection Motions are not yet set for a hearing.

### F.   Stay Relief Motion

After the Debtor had agreed with Fortress on the SARE designation in an effort to get negotiations in progress, DB Auraria immediately filed its Senior Lender's Motion for Order Lifting the Automatic Stay to Foreclose (the "**Stay Relief Motion**") (Docket No. 139). Fortress filed this on September 14, 2022, and the Debtor filed an objection by October 4, 2022 (Docket No. 171). Fortress has already requested relief under 11 U.S.C. § 362(d)(3) well before the time period under the SARE Order and that statute has elapsed. The preliminary hearing on the Stay Relief Motion was on October 11, 2022, and the evidentiary hearing on the same is set for November 7 and 8, 2022.

### G.   Cash Collateral Motion

On September 29, 2022, the Debtor filed an Expedited Motion of Debtor for Authority to Use Cash Collateral from October 1, 2022 through December 31, 2022 (the "**Cash Collateral Motion**") (Docket No. 155). On October 6, 2022, the Court entered an order granting the Cash Collateral Motion and approving the Debtor's use of cash collateral on an interim basis (Docket No. 175). The final hearing on the Cash Collateral Motion is set for October 24, 2022.

### H.   Post-Turnover Operations at the Real Property

The Debtor, Cardinal, and the Receiver worked together to effectuate a smooth and timely turnover of the Real Property from the Receiver to the Debtor after the Court denied Fortress's Motion to Excuse Turnover. The parties filed two joint status reports on turnover (Docket Nos. 150 and 173). The first phase of turnover of the Debtor's property was completed on Tuesday, September 27, 2022. As part of this process, the Debtor retained four staff members that Cardinal had hired to work at the Real Property. The Debtor has also filled two maintenance positions and is in the process of onboarding those two staff members. The Receiver held back funds pursuant to an agreed budget. The Debtor expects any remaining funds to be returned to the Debtor upon discharge of the Receiver and conclusion of the Receivership. Now that the Debtor is operating the Real Property, the Debtor will complete the Renovations that began in 2020 and market the Real Property for the Sale.

### I.   Renovations and Debtor-in-Possession Financing

The Debtor has actively prepared the Real Property for completion of the Renovations. In connection therewith, on November 4, 2022, the Debtor filed a motion for entry of an Order authorizing the Debtor to borrow up to $1,500,000.00 from SP 180 Fund, LLC (the "**DIP Lender**") and approving the Debtor's entry into a Postpetition Loan Agreement (the "**DIP Financing Motion**") (Docket No. 227). The DIP Financing Motion was approved by the Court on December 5, 2022 (Docket No. 261).

24950317

The DIP Financing Motion provides that the DIP Lender is an entity formed by Patrick Nelson, the Member of Nelson Partners, which is the Debtor's Member and Manager. The DIP Lender proposed to loan the Debtor up to $1.5 million (the "**Loans**") for numerous permitted purposes, including (a) the costs of completing the renovations, (b) cash shortfall, if any, resulting from ordinary course operations, (c) interest or adequate protection payments (to the extent monthly rents are insufficient) to the Debtor's prepetition lender as order by the Court or required by law, and (d) the costs of the Debtor's case administration approved by the Court, including the funding of a professional fee reserve of $450,000.00. The Renovation Budget is attached as an exhibit to the DIP Financing Motion. The Renovation Budget's projected total for the cost of the Renovations is $881,147.31, which amounts to $16,317.54 per unit or $146,857.89 per floor.

In exchange for making the Loans, DIP Lender will receive a junior the DIP Lender will hold administrative expense claim status pursuant to 11 U.S.C. § 364(b); a lien on the Property, junior to existing liens, pursuant to 11 U.S.C. § 364(c)(3); and a lien on unencumbered assets of the Debtor pursuant to 11 U.S.C. § 364(c)(2); provided, however, that (i) the lien shall not attach to avoidance claims under Chapter 5 of the Bankruptcy Code; and (ii) the lien on the Professional Fee Reserve is subordinate to claims of professionals for compensation.

## IV. DESCRIPTION OF PLAN

The following is a brief summary of certain provisions of the Plan; however, this summary is not comprehensive. The Plan, and not the Disclosure Statement, is the legally operative document that controls the relationship between the Debtor and its creditors and Interest holders. Therefore, the Plan should be read carefully and independently of this Disclosure Statement. Creditors and Interest holders are urged to consult with counsel and other professionals to resolve any questions concerning the Plan.

### A. Overview of the Plan

The Debtor filed its Plan with the Court on October 17, 2022. The Plan provides for the renovation and orderly liquidation of the principal asset of the Debtor, i.e., the Real Property, under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, once the Real Property has been liquidated, the Debtor shall distribute funds to creditors in conformity with the Bankruptcy Code. The Plan is a relatively simple Chapter 11 plan of reorganization.

### B. Treatment of Unclassified Claims

#### 1. Administrative Claims

The holders of Allowed Administrative Claims of the type specified in Section 507(a)(2) of the Bankruptcy Code shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Allowed Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be upon allowance in accordance with the Plan or as otherwise agreed.

#### 2. Tax Claims

24950317

The Allowed Tax Claims, if any, of a type specified in section 507(a)(8) of the Bankruptcy Code, Tax Claims of governmental taxing authorities, shall be paid on the Effective Date of the Plan or in monthly payments for a period that does not exceed five (5) years from the Petition Date with interest at the appropriate rate set by applicable statute. The Debtor shall have the option to accelerate payments without penalty. The first monthly payment shall be due on the last day of the first full month following the Effective Date.

### 3. DIP Loan

The DIP Lender shall receive cash equal to the allowed amount of its Claim on account of the DIP Loan or a lesser amount or different treatment as may be acceptable and agreed to by the Debtor and the DIP Lender.

### 4. U.S. Trustee Payments

The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All outstanding payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

## C. Classification and Treatment of Claims and Interests

The classification of Claims and Interests against the Debtor under the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | | |
| 1.a | Mechanic's Lien Claims | Impaired | Entitled to Vote |
| 1.b | GID Secured Claim | Impaired | Entitled to Vote |
| 1.c | Disputed Fortress Secured Claim | Impaired | Disputed, voting subject to determination by Court order |
| 1.d | Auraria Stub Secured Claim | Impaired | Entitled to Vote |
| 1.e | Other Secured Claims | Impaired | Entitled to Vote |
| 2 | Priority Security Deposit Claims | Impaired | Entitled to Vote |
| 3 | Other General Unsecured Claims | Impaired | Entitled to Vote |

24950317

| 4 | Equity | Impaired | Entitled to Vote |

**D. Description and Treatment of Classified Claims**

**1. Class 1 – Secured Claims**

Class 1 consists of the asserted secured Claims against the Debtor held by SNR, RediCarpet, GID, Fortress, Auraria Stub, and any other secured Claims, to the extent that there are any. Each separate holder of a Class 1 Claim shall be deemed its own class for purposes of voting on the Plan.

(a)     The Class 1.a Claims consist of two mechanic's liens, one held by SNR and the other held by RediCarpet. Class 1.a is impaired under the Plan. Each holder of a Class 1.a Claim shall retain its lien securing its Claim to the same extent and with the same priority as its pre-petition lien and shall be paid from Net Sale Proceeds upon the closing of the Sale in accordance with the Waterfall Recovery specified in Section 4.05 of the Plan. Each Class 1.a Claim shall accrue interest from and after the Effective Date at the rate of 5.25% per annum or such other rate set forth in the Confirmation Order. Each Class 1.a Claim shall be paid in accordance with the terms of the Plan on or before August 31, 2023, or the holders of these Claims may pursue their remedies in accordance with applicable law.

(b)     The Class 1.b Claim consists of a statutory lien claim on all the assets of the Debtor held by GID. Class 1.b is impaired under the Plan. The holder of the Class 1.b Claim shall retain its lien securing its Claim to the same extent and with the same priority as its pre-petition lien and shall be paid from Net Sale Proceeds upon the closing of the Sale in accordance with the Waterfall Recovery specified in Section 4.05 of the Plan. The Class 1.b Claim shall accrue interest from and after the Effective Date at the rate of 5.25% per annum or such other rate set forth in the Confirmation Order. The Class 1.b Claim shall be paid in accordance with the terms of the Plan on or before August 31, 2023, or the holder of this Claim may pursue its remedies in accordance with applicable law.

(c)     The Class 1.c Claim consists of the Disputed Secured Claim of Fortress related to the asserted first-position mortgage on the Real Property. Class 1.c is impaired under the Plan. The holder of the Class 1.c Claim shall retain its lien securing its Claim to the same extent and with the same priority as its pre-petition lien and shall be paid from Net Sale Proceeds upon the closing of the Sale in accordance with the Waterfall Recovery specified in Section 4.05 of the Plan, subject to provisions of the Plan governing Disputed Claims and further subject to Final Orders of the Court. Except as may be provided in Court order, the holder of the Class 1.c Claim shall not be entitled to credit bid at the Sale. On each month, from and after occurrence of the Effective Date, the reorganized Debtor shall pay interest at the rate of 5.25% per annum or such other rate set forth in the Confirmation Order. The Class 1.c Claim shall be paid in accordance with the terms of the Plan (subject to provisions regarding Disputed Claims) on or before August 31, 2023, or the holder of this Claim may pursue its remedies in accordance with applicable law.

(d)     The Class 1.d Claim consists of the Secured Claim of Auraria Stub. Class 1.d is impaired under the Plan. The holder of the Class 1.d Claim shall retain its lien securing its Claim to the same extent and with the same priority as its pre-petition lien and shall be paid from Net Sale Proceeds upon the closing of the Sale in accordance with the Waterfall Recovery specified in Section

15

4.05 of the Plan. The Class 1.d Claim shall accrue interest from and after the Effective Date at the rate of 5.25% per annum or such other rate set forth in the Confirmation Order. The Class 1.d Claim shall be paid in accordance with the terms of the Plan on or before August 31, 2023, or the holder of this Claim may pursue its remedies in accordance with applicable law.

(e)   The Class 1.e Claims consists of any other Secured Claims, to the extent that there are any such Claims. Class 1.e is impaired under the Plan. The Debtor is not aware of any other Secured Claims, but, to the extent there are other Secured Claims, including any tax liens, each holder of a Class 1.e Claim shall retain its lien securing its Claim to the same extent and with the same priority as its prepetition lien and shall be paid from Net Sale Proceeds upon the closing of the Sale in accordance with the Waterfall Recovery specified in Section 4.05 of the Plan.

## 2. Class 2 – Priority Security Deposit Claims

Class 2 consists of the Priority Security Deposit Claims held by the Debtor's former tenants. Class 2 is impaired under the Plan. Holders of a Class 2 Claim shall be paid in full on or before the date that is forty-five (45) days after the Effective Date. For the avoidance of doubt, a Class 2 claimant shall not receive a greater amount under the Plan than the amount of its Allowed Claim.

## 3. Class 3 – Other General Unsecured Claims

Class 3 is impaired under the Plan. The holders of Allowed Unsecured Claims in Class 3 shall be paid from Net Sale Proceeds upon the closing of the Sale in accordance with the Waterfall Recovery specified in Section 4.05 of the Plan. For the avoidance of doubt, a Class 3 claimant shall not receive a greater amount under the Plan than the amount of its Allowed Claim.

## 4. Class 4 – Equity

Class 4 consists of the prepetition member interest of Nelson Partners, as the sole member and manager of the Debtor. Class 4 is impaired under the Plan. Unless and until all Allowed Claims of a higher priority are paid in full, the holder of the Class 4 Equity Interest will receive no rights in respect of its ownership in the Debtor. If the Allowed Unsecured Claims are paid in full, the Class 4 Equity Interest shall be paid the remaining Net Sale Proceeds.

## E. Means of Execution

### 1. Effectuating the Plan

Upon the Effective Date, the Estate's Assets shall vest with the reorganized Debtor. The reorganized Debtor will complete renovations on the Real Property, to the extent applicable, and shall operate the Real Property consistent with the Debtor's practices during the Chapter 11 case.

### 2. Sale

The Debtor's Real Property and associated Personal Property will be sold and proceeds used to pay Allowed Claims and, if sufficient, provide a return to the Class 4 Claim holder. The Debtor shall conduct the Sale in accordance with the following provisions:

24950317

a.     *Marketing*. In conjunction with a reputable broker, engaged in the Chapter 11 Case subject to approval of the Court, the Debtor shall establish and promulgate written procedures and deadlines in consultation with the holder of the Class 1.d Claim. The Debtor may modify the procedures from time to time in its business judgment, after consultation. The Debtor will provide access to information in a data room and make certain of the Debtor's Assets available for inspection to qualified buyers who have signed an appropriate non-disclosure agreement, if one is deemed advisable. This marketing process may commence whether or not renovations have been completed.

b.     *Initial Bids*. The Confirmation Order shall establish a deadline for submission of initial bids that shall be accompanied by a deposit determined by the Debtor and evidence of financial ability to close, if not previously provided, acceptable to the Debtor in its discretion.

c.     *Discretion to Select Stalking Horse*. The Debtor may, in its discretion after consultation with the holder of the Class 1.d Claim, negotiate with a potential bidder and execute a purchase and sale agreement, subject to higher and better bids, and provide customary bid protections as part of the agreement.

d.     *Right to Refinance*. If the Debtor obtains funding sufficient to pay all Allowed Claims (in case or as may be negotiated), including sufficient reserves for Disputed Claims in accordance with Section 4.06(c) of this Plan, the Debtor may proceed with such transaction at any time, subject to the rights, if any, of a stalking horse bidder.

e.     *Auction*. If adequate bids are received, the Debtor may conduct the Sale through an auction to be held on a date established in the Confirmation Order, which may be modified by the Debtor in its reasonable discretion after consultation with the holder of the Class 1.d Claim. The Debtor may establish rules and procedures for conduct of the auction and may modify them from time to time as deemed appropriate.

f.     *Back-Up Bidder*. The Debtor may select a back-up bidder who will remain bound by its bid through the closing date of Sale to the bid selected as highest and best. If the Sale to the buyer designated as having the highest and best bid does not close, the Debtor may close the Sale with the back-up bidder.

g.     *Sale Free and Clear of Liens.* The Sale shall be subject to Court approval and will be free and clear of liens, with liens attaching to proceeds and distributed pursuant to the terms of this Plan. Upon selection of the highest and best bid, the Debtor shall seek Court approval of the Sale.

h.     *Financial Projections*. Attached as **Exhibit A** is the Debtor's most recent monthly operating report[2] that sets forth expenses and revenue derived from operation of the Property from the Petition Date through October 2022. Attached as **Exhibit B** are financial projections prepared by Debtor's management for the period from after the Confirmation Date through the projected date

---

[2] The monthly operating report attached to this Disclosure Statement does not include all of the supporting documents. The supporting documents are attached to the monthly operating report that was filed publicly on the case docket maintained on PACER. To receive a copy of the supporting documents, please reach out to counsel for the Debtor at the contact information on the signature block at the end of this Disclosure Statement.

24950317

for completion of renovations and sale of the Real Property. Projections are inherently uncertain, but the financial projections set forth in **Exhibit B** are Debtor's best effort to project the results of operations for the Debtor based on all facts and circumstances presently known to the Debtor.

### 3. Student Deposits Turned Over From the Receiver

Student security deposits turned over to the Debtor from the Receiver shall be maintained in a segregated account and turned over to students at the conclusion of their leases in accordance with the terms of the respective leases and applicable law. To the extent tenant leases are assigned in connection with the Sale, the terms of the Sale shall provide that the buyer shall be required to similarly manage the student security deposits.

### 4. Waterfall Recovery

Unless the Court provides for a different priority in the Confirmation Order, all Net Sale Proceeds (less any account minimum required by the bank where the account is maintained), and subject to provisions for Disputed Claims provided herein, shall be allocated and paid to the applicable holders of Claims from time to time in the following priority, in each case on a Pro Rata basis: (i) first, any property tax claims or other claims secured by a lien provided by statute having a higher priority than recorded deeds of trust; (ii) second, to the holder of Class 1.a Claim; (iii) third, to the holder of the Class 1.b Claim; (iv) fourth, to the holders of Class 1.c Claims; (v) fifth, to the holder of the Class 1.d Claim; (vi) sixth, to holders of Class 1.e Claims, if any; (vii) seventh, to holders of Allowed Administrative Claims and the holder of the DIP Loan Claim; (viii) eighth, to holders of Class 3 Claims; and (ix) ninth, to the extent any Net Sale Proceeds are remaining, they shall be paid to the holder of the Class 4 Equity Interest Claim.

### 5. Preservation, Prosecution, and Settlement of Causes of Action

The Debtor shall have standing to commence, prosecute, and settle Causes of Action and Avoidance Actions without need for Court approval. All such claims are preserved to the maximum extent permitted by law. The Debtor may, in its discretion, enter into litigation funding in respect of retained Causes of Action. Without limiting the foregoing, the Debtor specifically reserves all its claims and causes of action against Fortress Credit Corporation and DB Auraria.

Recoveries on any such Causes of Action will first be applied to fees and expenses of litigation, including repayment of litigation funding, then remaining proceeds will be distributed in accordance with the waterfall provisions in Section 4.05 of the Plan, starting with Section 4.05(vii).

## F. Assets Potentially Available to Creditors and Equity Holders

### 1. Real Property

The Debtor's business has been discussed in this Disclosure Statement. The Sale of the Real Property is possibly the central feature of the Plan. The Debtor believes that the Real Property currently has a value of $65 million or more. Moreover, the renovations the Debtor is in the process of resuming should enhance the value significantly. The Sale, if successfully carried out after completion of the

24950317

renovations, is expected to generate proceeds sufficient to pay all allowed secured and unsecured claims, and generate a return to equity.

### 2. Cause of Action Against Fortress

The background of Fortress' involvement with the Cantor Loan is outlined in this Disclosure Statement. The Debtor believes that it holds meritorious claims that may generate affirmative recovery and/or reduction in the allowed amount, if any, of the secured claim asserted by DB Auraria. These claims and causes of action include breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, and misrepresentation. In sum, the Debtor believes that Fortress, through DB Auraria, wrongfully acquired the Cantor Loan for the purpose of foreclosing on it and taking the substantial value of the Real Property for itself, at the expense of other creditors and equity. It is not credible, in the Debtor's view, that Fortress would have paid $46 million for a loan having a principal balance of $46.5 million, fully aware that the loan was likely to mature within 30 days.

## V. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is party to certain unexpired leases and executory contracts and is continuing its evaluation of its leases and contracts to determine whether they are subject to assumption under Bankruptcy Code section 365.

### A. Tenant Leases

To the extent that the Debtor determines that any leases with its tenants at the Real Property are subject to assumption under Bankruptcy Code section 365(b), such leases shall be deemed assumed on the Effective Date of the Plan.

### B. Property Management Agreement

To the extent the Nelson Partners property management agreement is an executory contract subject to assumption under Bankruptcy Code section 365(b), such agreement shall be deemed assumed on the Effective Date of the Plan; any arrearages will be treated as a General Unsecured Claim against the Debtor; and Nelson Partners shall not be entitled to a cure payment under Bankruptcy Code section 365(b).

### C. Other Unexpired Leases and Executory Contracts

Any executory contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that (i) the Debtor has not assumed or assigned or rejected with the approval of the Court, (ii) is not identified as an assumed contract, or (iii) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtor. The deadline for filing rejection damages claims, if any, shall be set forth in the Confirmation Order.

## VI. MISCELLANEOUS PROVISIONS

24950317

### A. Post-Effective Date Fees and Expenses

From and after the Effective Date, in the ordinary course of business and without the necessity for any approval by the Court, the reasonable fees and expenses of professional Persons incurred after the Effective Date by the Debtor will be paid by the Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### B. U.S. Trustee Payments

The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All outstanding payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

### C. Claims Objections and Settlements

The Debtor will review all Proofs of Claim filed in its case and may or may not object to the allowability of such claims. The Debtor shall object, when appropriate to any Administrative Expense, secured or unsecured Claim. The deadline for the Debtor to file Claims objections will be set forth in the Confirmation Order, subject to extension by motion to the Court.

The Debtor shall be authorized to compromise and settle any claim and/or dispute that it may have against any entity or that may have been brought by any entity against the Debtor. Any such compromise or settlement shall be subject to approval by the Bankruptcy Court after notice and opportunity for hearing as provided for pursuant to Rule 9013 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the District of Colorado, unless otherwise ordered by the Court.

### D. Disputed Claims

Distributions to any class of creditor will be made on account of Allowed Claims. In the event that distributions are made at a time that a Claim objection is pending before the Court, a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, or a Claim is otherwise Disputed and not yet Allowed, the holder of the Disputed Claim shall not receive a distribution but instead the portion of the distribution that would be made on account of the Disputed Claim had it been an Allowed Claim in the amount asserted, which will be held in an interest bearing bank account until the Claim is Allowed or disallowed. If Allowed, the Claim will be paid in the Allowed amount from the withheld payment. If disallowed, the withheld distribution will be paid on a Pro Rata basis to Allowed claimants in accordance with the Waterfall Recovery set forth in Section 4.05 of the Plan.

### E. Administrative Claims Bar Date

All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 60 days following the Confirmation Date. Holders of Administrative Claims that do not timely request payment on account of Administrative Claims shall be forever barred,

20

estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.

### F. Exculpation

The Plan contains an exculpation provision providing, among other things, that no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, obligation, Cause of Action or liability for any Exculpated Claim, except for gross negligence or willful misconduct or fraud (to the extent such duty is imposed by applicable nonbankruptcy law).

### G. Retention of Jurisdiction

The Plan also contains a standard retention of jurisdiction provision. The Court will retain jurisdiction to, among other things, enforce the terms of the Plan and enter an order approving or otherwise in respect of the Sale.

## VII.  RISK FACTORS

As with any plan or other financial transaction, there are certain risk factors that must be considered. It should be noted that all risk factors cannot be anticipated, that some events will develop in ways that were unforeseen and that many or all the assumptions that have been used in connection with this Disclosure Statement and the Plan will not be realized exactly as assumed. Some or all of such variations may be material. While every effort has been made to be reasonable in this regard, there can be no assurance that subsequent events will bear out the analysis set forth herein. Not all possible risks can be, or are discussed, in this Disclosure Statement. Under the Plan, some of the principal risks that holders of Claims and Interests should be aware of, in the Debtor's view, are as follows:

### A. Certain Bankruptcy Law Considerations

1. Parties-in-Interest May Object to the Debtor's Classification of Claims and Equity Interests.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created classes of Claims that are substantially similar to the other Claims in each such class. Nevertheless, there can be no assurance that the Court will reach the same conclusion.

2. The Debtor May Object to the Amount of a Claim.

Except as otherwise provided in the Plan, the Debtor reserves the right to object to the amount of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection. Thus, any holder of a Claim that

is subject to an objection, thus, may not receive its expected share of the estimated distributions described in this Disclosure Statement.

**B. Risk Factors That May Affect Recoveries Under The Plan**

1. <u>Amount of Priority Claims</u>.

Bankruptcy Code section 1129(a)(9) requires that claims entitled to statutory priority be paid in cash or deferred cash payments. If unanticipated priority claims arise, funds available to pay unsecured creditors could be reduced dollar for dollar.

2. <u>Amount of General Unsecured Claims</u>.

To the extent that General Unsecured Claims in Class 3 exceed forecast amounts, any distributions thereon would be diluted.

3. <u>The Court May Deny Confirmation of the Plan</u>.

The Court may not confirm the Plan as projected, and the Effective Date of the Plan may not occur.

4. <u>The Debtor May Not Sell Its Assets or May Not Realize the Value It Expects.</u>

The Debtor believes this scenario to be highly unlikely, but there is always the risk that a buyer will not close on the purchase of the Debtor's Real Property. If this occurs, the Debtor will be entitled to the earnest money deposits and will then have to seek another buyer of the Real Property or renew its efforts to fund the Plan via a refinancing event. There is no guarantee that the Debtor will (i) find another buyer who will offer and close at a sale price for the Real Property and associated Personal Property sufficient to pay all creditors in full or (ii) obtain sufficient financing to pay all creditors in full.

In addition, while the Debtor is confident of the value of the Real Property, it is possible that the Real Property will not fetch the expected Sale price.

## IX.  RECOMMENDATION, SOLICITATION AND ACCEPTANCE OF PLAN

The Debtor hereby solicits acceptance of the Plan and urges its creditors and Interest holders to vote to accept the Plan. As set forth above, the Debtor believes that the Plan represents the best alternative for providing the maximum value for creditors. The Debtor strongly believes that confirmation of the Plan is in the best interest of creditors and recommends that all creditors entitled to vote on the Plan vote to accept the Plan.

[*Signatures on following page*.]

DATED: December 14, 2022

**5820 AURARIA, LLC**


*/s/ Patrick Nelson*

Patrick Nelson, Member of Nelson Partners, LLC,
in its capacity as Member and Manager of the Debtor


APPROVED AS TO FORM:

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**


By: */s/ Michael J. Pankow*
     Michael J. Pankow, Esq.
     Amalia Sax-Bolder, Esq.
     410 17th Street, Suite 2200
     Denver, CO 80202
     Phone: (303) 223-1100
     Fax: (303) 223-1111
     Email: mpankow@bhfs.com
          asax-bolder@bhfs.com

*Attorneys for the Debtor*

24950317

**Exhibit A**

**(October 2022 Monthly Operating Report)**

24950317

# UNITED STATES BANKRUPTCY COURT

### DISTRICT OF  COLORADO

In Re. 5280 Auraria, LLC

§
§
§
§

Case No.  22-12059

Debtor(s)

☐ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 10/31/2022

Petition Date: 06/09/2022

Months Pending: 5

Industry Classification: | 6 | 5 | 1 | 3 |

Reporting Method:        Accrual Basis ⦿        Cash Basis ◯

Debtor's Full-Time Employees (current):        0

Debtor's Full-Time Employees (as of date of order for relief):        0

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒        Statement of cash receipts and disbursements
☒        Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒        Statement of operations (profit or loss statement)
☒        Accounts receivable aging
☐        Postpetition liabilities aging
☐        Statement of capital assets
☐        Schedule of payments to professionals
☐        Schedule of payments to insiders
☒        All bank statements and bank reconciliations for the reporting period
☐        Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Michael J. Pankow

Signature of Responsible Party

11/22/2022

Date

Michael J. Pankow

Printed Name of Responsible Party

Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO  80202
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (12/01/2021)                                        1

Debtor's Name  5280 Auraria, LLC                                    Case No.  22-12059

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. | Cash balance beginning of month | $685,404 *see attachment | |
| b. | Total receipts (net of transfers between accounts) | $179,098 | $1,412,952 |
| c. | Total disbursements (net of transfers between accounts) | $441,469 | $1,424,553 |
| d. | Cash balance end of month (a+b-c) | $423,033 | |
| e. | Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f. | Total disbursements for quarterly fee calculation (c+e) | $441,469 | $1,424,553 |

| Part 2: Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a. | Accounts receivable (total net of allowance) | $26,126 |
| b. | Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c. | Inventory    (Book ○  Market ○  Other ◉   (attach explanation)) | $0 |
| d | Total current assets | $65,644,443 |
| e. | Total assets | $65,670,569 |
| f. | Postpetition payables (excluding taxes) | $136,248 |
| g. | Postpetition payables past due (excluding taxes) | $0 |
| h. | Postpetition taxes payable | $0 |
| i. | Postpetition taxes past due | $0 |
| j. | Total postpetition debt (f+h) | $136,248 |
| k. | Prepetition secured debt | $55,718,347 |
| l. | Prepetition priority debt | $56,424 |
| m. | Prepetition unsecured debt | $1,670,458 |
| n. | Total liabilities (debt) (j+k+l+m) | $57,581,477 |
| o. | Ending equity/net worth (e-n) | $8,089,092 |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. | Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b. | Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. | Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4: Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. | Gross income/sales (net of returns and allowances) | $296,111 | |
| b. | Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. | Gross profit (a-b) | $296,111 | |
| d. | Selling expenses | $0 | |
| e. | General and administrative expenses | $1,107 | |
| f. | Other expenses | $83,430 | |
| g. | Depreciation and/or amortization (not included in 4b) | $0 | |
| h. | Interest | $0 | |
| i. | Taxes (local, state, and federal) | $0 | |
| j. | Reorganization items | $0 | |
| k. | Profit (loss) | $211,575 | $669,453 |

UST Form 11-MOR (12/01/2021)                              2

Debtor's Name  5280 Auraria, LLC                              Case No.  22-12059

| Part 5:  Professional Fees and Expenses | | | | | |
|---|---|---|---|---|---|
| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name | Role | | | |
| i | Brownstein Hyatt Farber Schreck | Lead Counsel | $0 | $0 | $0 | $0 |
| ii | | | | | |
| iii | | | | | |
| iv | | | | | |
| v | | | | | |
| vi | | | | | |
| vii | | | | | |
| viii | | | | | |
| ix | | | | | |
| x | | | | | |
| xi | | | | | |
| xii | | | | | |
| xiii | | | | | |
| xiv | | | | | |
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |

Debtor's Name  5280 Auraria, LLC                                    Case No.  22-12059

| | | | | | |
|---|---|---|---|---|---|
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |

Debtor's Name  5280 Auraria, LLC                                          Case No.  22-12059

| | | | | | | |
|---|---|---|---|---|---|---|
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | | | | | | |
| ii | | | | | | |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |

Debtor's Name 5280 Auraria, LLC                                    Case No. 22-12059

| | | | | | |
|---|---|---|---|---|---|
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |

UST Form 11-MOR (12/01/2021)                          6

Debtor's Name  5280 Auraria, LLC                                    Case No.  22-12059

| | | | | | | |
|------|--|--|--|--|--|--|
| lvii | | | | | | |
| lviii | | | | | | |
| lix | | | | | | |
| lx | | | | | | |
| lxi | | | | | | |
| lxii | | | | | | |
| lxiii | | | | | | |
| lxiv | | | | | | |
| lxv | | | | | | |
| lxvi | | | | | | |
| lxvii | | | | | | |
| lxviii | | | | | | |
| lxix | | | | | | |
| lxx | | | | | | |
| lxxi | | | | | | |
| lxxii | | | | | | |
| lxxiii | | | | | | |
| lxxiv | | | | | | |
| lxxv | | | | | | |
| lxxvi | | | | | | |
| lxxvii | | | | | | |
| lxxvii | | | | | | |
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |

Debtor's Name  5280 Auraria, LLC                                    Case No.  22-12059

| | | | | | | |
|---|---|---|---|---|---|---|
| | xcix | | | | | |
| | c | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

| **Part 6:  Postpetition Taxes** | **Current Month** | **Cumulative** |
|---|---|---|
| a. Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. Postpetition employer payroll taxes accrued | $0 | $0 |
| d. Postpetition employer payroll taxes paid | $0 | $0 |
| e. Postpetition property taxes paid | $0 | $0 |
| f. Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

**Part 7: Questionnaire - During this reporting period:**

| | | |
|---|---|---|
| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ○  No ◉  *see attachment |
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ◉  No ○  *see attachment |
| c. | Were any payments made to or on behalf of insiders? | Yes ○  No ◉ |
| d. | Are you current on postpetition tax return filings? | Yes ◉  No ○ |
| e. | Are you current on postpetition estimated tax payments? | Yes ◉  No ○ |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ◉  No ○ |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ○  No ◉ |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ○  No ○  N/A ◉ |
| i. | Do you have:  Worker's compensation insurance? | Yes ○  No ◉ |
| | If yes, are your premiums current? | Yes ○  No ○  N/A ◉  (if no, see Instructions) |
| | Casualty/property insurance? | Yes ◉  No ○ |
| | If yes, are your premiums current? | Yes ◉  No ○  N/A ○  (if no, see Instructions) |
| | General liability insurance? | Yes ◉  No ○ |
| | If yes, are your premiums current? | Yes ◉  No ○  N/A ○  (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | Yes ◉  No ○ |
| k. | Has a disclosure statement been filed with the court? | Yes ◉  No ○ |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ◉  No ○ |

Debtor's Name  5280 Auraria, LLC                                          Case No.  22-12059

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ◯  No ◉ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ◯  No ◯  N/A ◉ |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**<u>I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.</u>** \*\*Certain estate property is in the possession of a receiver under an agreed holdback budget and accordingly, certain information herein and in the attached supporting documentation was derived solely from information and reporting received from the receiver.

/s/ Patrick Nelson                                          Patrick Nelson

Signature ‹                                                  Printed Name of Responsible Party

Member, Nelson Partners, LLC, the Member and                11/22/2022

Title  Manager of 5280 Auraria, LLC                         Date

Debtor's Name  5280 Auraria, LLC                                    Case No.  22-12059



PageOnePartOne

PageOnePartTwo

PageTwoPartOne

PageTwoPartTwo

Debtor's Name  5280 Auraria, LLC                                              Case No.  22-12059

Bankruptcy1to50

Bankruptcy51to100

NonBankruptcy1to50

NonBankruptcy51to100

Debtor's Name  5280 Auraria, LLC                                      Case No.  22-12059



PageThree



PageFour

**Exhibit B**

**(Financial Projections)**

24950317

**Projected Revenue, Expenses and Cash Flow (Before Professional Fees)**

| | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 | July 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $269,976.30 | $719,585.69 | $666,339.76 | $615,949.15 | $1,353,808.54 | $1,181,512.56 | $1,071,062.10 | $1,004,731.49 | $936,152.32 |
| | | | | | | | | | |
| Income & Receipts | | | | | | | | | |
| Gross Potential Rent | $285,126.00 | $285,126.00 | $285,126.00 | $285,126.00 | $285,126.00 | $285,126.00 | $285,126.00 | $285,126.00 | $285,126.00 |
| Rent Adjustments | -$13,420.00 | -$13,420.00 | -$13,420.00 | -$13,420.00 | -$13,420.00 | -$13,420.00 | -$13,420.00 | -$13,420.00 | -$13,420.00 |
| Total Rent | $271,706.00 | $271,706.00 | $271,706.00 | $271,706.00 | $271,706.00 | $271,706.00 | $271,706.00 | $271,706.00 | $271,706.00 |
| Residential Fees | $17,170.00 | $17,170.00 | $17,170.00 | $17,170.00 | $17,170.00 | $17,170.00 | $17,170.00 | $17,170.00 | $17,170.00 |
| Parking Revenue | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Laundry Income | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| Vending & Storage Income | $332.00 | $332.00 | $332.00 | $332.00 | $332.00 | $332.00 | $332.00 | $332.00 | $332.00 |
| Bad Debt - Allowance | -$4,500.00 | -$4,500.00 | -$4,500.00 | -$4,500.00 | -$4,500.00 | -$4,500.00 | -$4,500.00 | -$4,500.00 | -$4,500.00 |
| DIP Funding | $500,000.00 | | | $1,000,000.00 | | | | | |
| Total Income & Receipts | $785,458.00 | $285,458.00 | $285,458.00 | $1,285,458.00 | $285,458.00 | $285,458.00 | $285,458.00 | $285,458.00 | $285,458.00 |
| | | | | | | | | | |
| (Expenses & Disbursements) | | | | | | | | | |
| G&A - Office | $7,527.00 | $7,527.00 | $7,527.00 | $7,527.00 | $7,527.00 | $7,527.00 | $7,527.00 | $7,527.00 | $7,527.00 |
| Payroll | $47,899.00 | $47,899.00 | $47,899.00 | $47,899.00 | $47,899.00 | $47,899.00 | $47,899.00 | $47,899.00 | $47,899.00 |
| Leasing and Marketing | $8,723.00 | $8,723.00 | $8,723.00 | $8,723.00 | $8,723.00 | $8,723.00 | $8,723.00 | $8,723.00 | $8,723.00 |
| Insurance | | | | | | $44,119.85 | | | |
| Property Management Fees | $8,563.74 | $8,563.74 | $8,563.74 | $8,563.74 | $8,563.74 | $8,563.74 | $8,563.74 | $8,563.74 | $8,563.74 |
| Maintenance | $5,550.00 | $5,550.00 | $5,550.00 | $5,550.00 | $5,550.00 | $5,550.00 | $5,550.00 | $5,550.00 | $5,550.00 |
| Service Contracts | $14,600.00 | $14,600.00 | $14,600.00 | $14,600.00 | $14,600.00 | $14,600.00 | $14,600.00 | $14,600.00 | $14,600.00 |
| Utilities | $41,472.00 | $41,472.00 | $41,472.00 | $41,472.00 | $41,472.00 | $41,472.00 | $41,472.00 | $41,472.00 | $41,472.00 |
| Other Property Expenses | $5,703.87 | $5,703.87 | $5,703.87 | $5,703.87 | $5,703.87 | $5,703.87 | $5,703.87 | $5,703.87 | $5,703.87 |
| Capital Improvement [(1)] | $195,810.00 | $195,810.00 | $195,810.00 | $195,810.00 | $97,905.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| U.S. Trustee Quarterly Fees | | $2,855.32 | | | $8,060.37 | | | $2,248.56 | |
| Plan Payments | | | | $211,750.00 | $211,750.00 | $211,750.00 | $211,750.00 | $211,750.00 | $211,750.00 |
| Professional Fees** | | | | | | | | | |
| (Total Monthly Expenses) | $335,848.61 | $338,703.93 | $335,848.61 | $547,598.61 | $457,753.98 | $395,908.46 | $351,788.61 | $354,037.17 | $351,788.61 |
| | | | | | | | | | |
| Ending Cash Balance** | $719,585.69 | $666,339.76 | $615,949.15 | $1,353,808.54 | $1,181,512.56 | $1,071,062.10 | $1,004,731.49 | $936,152.32 | $869,821.71 |

**Professional Fees will be paid in such amounts and at such times as permitted by Court order. Cash balance will be reduced by such amounts.

[(1)] This line item accounts for the renovation budget attached to the DIP Financing Motion. Given the construction shcedule could change, this line item may change month over month, but the aggregate amount of renovations is not expected to vary drastically over the 9 month period.