## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **5280 AURARIA, LLC,** | ) | **CASE NO. 22-12059-KHT** |
| | ) | |
| Debtor | ) | **CHAPTER 11** |
| | ) | |

## DB AURARIA'S OBJECTIONS TO DEBTOR'S
## MODIFIED DISCLOSURE STATEMENT

Secured creditor DB Auraria, LLC ("DB Auraria" or "Senior Lender") files its objections to the amended disclosure statement (ECF # 270) (the "Amended Disclosure Statement") submitted by debtor 5280 Auraria, LLC ("Debtor").[1]

## SENIOR LENDER'S OBJECTIONS

The Amended Disclosure Statement includes a new set of financial projections, appended as Exhibit B (the "Financial Projections"), as well as a description of the DIP Loan and the Debtor's objection to DB Auraria's secured claim. The Financial Projections reflect the economic core of the Debtor's plan. Some of the new information contradicts information elsewhere in the Amended Disclosure Statement, while other items raise material questions that creditors are entitled to know the answers to before voting for or against the Plan.

1.  **Conflicting Property Valuations.** The Amended Disclosure Statement's new Financial Projections conflict with the body of the Amended Disclosure Statement regarding the value of the Debtor's Property. The Amended Disclosure Statement indicates that the Debtor is confident that the Property is worth $65 million or more, and that sales proceeds will pay all creditors in full. But the Financial Projections provide for interest to be paid to DB Auraria at a 5.25% rate (an unreasonably low rate in the current environment) with monthly payments of $211,750. Doing the math, this must be based on a value of DB Auraria's senior secured claim, *i.e.,* the value of the Property, at $48.4 million. Both values cannot be right. Either the Financial Projections need to be amended to provide for interest payments to DB Auraria based on the full amount of its claim, or the Amended Disclosure Statement needs to explain how the Plan works when the value of the Property is insufficient to pay even the senior secured creditor in full.

2.  **Effect of the Debtor's Objection to Senior Lender's Claim on Plan Distributions.** The Amended Disclosure Statement includes new language stating that DB Auraria's claim is "grossly overstated," and the Debtor disputes the claim in an "amount to be

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Disclosure Statement.

1

determined." But fundamentally the Plan must be predicated on paying or reserving the full amount of DB Auraria's claim. In this regard, there is an inherent inconsistency in the Amended Disclosure Statement. It states that the Property will be sold under the Plan and the Debtor expects to receive at least $65 million, which will pay off all creditors in full. If that does not occur by August 2023, then DB Auraria, like other secured creditors, will be able to pursue its state law remedies. The Amended Disclosure Statement then lists as a risk under the Plan that the Debtor may not be able to sell the Property for $65 million. The Amended Disclosure Statement is silent on whether the Debtor can sell the Property under the Plan for less than $65 million, how section 363(f) of the Bankruptcy Code will be complied with, and what state law remedies are left behind for creditors if the Property, the Debtor's sole asset, can be sold  for less than $65 million. The Amended Disclosure Statement must clarify this point.[2]

3.    **Use of Cash Collateral to Fund Pre-Confirmation Renovations**. The Amended Disclosure Statement's Financial Projections reveal for the first time that the bulk of the approved debtor-in-possession financing (the "DIP Loan") will not actually be funded until next March, even though costs begin in December. The Financial Projections reflect that $500,000 of the DIP Loan will or may be funded in December, and construction costs exceeding that amount could be paid before the rest of the DIP Loan is funded in March. The Amended Disclosure Statement should make clear that the renovation expenses will be only be paid from DIP Loan proceeds (and not cash collateral). The Amended Disclosure Statement should also confirm that the $500,000 included in the new Financial Projections has actually been funded.

4.    **Financial Capability of the DIP Lender**. The Amended Disclosure Statement's new Financial Projections reveal that most of the DIP Loan ($1 million), which is needed to complete renovations and pay the Debtor's administrative costs, will not be funded by the DIP Lender until March. DB Auraria has serious concerns that the DIP Lender may not be able to fund the DIP Loan at that time, due to events that have only recently come to its attention, and which the Court may not be aware of.

5.    The risk that the DIP Lender will prove unable to fund renovation costs in March is considerable because the Debtor's owner, Nelson Partners, appears to have diverted cash away from the DIP Lender and may not be able to return it. Specifically, Patrick Nelson, Nelson Partners, LLC (the Debtor's owner), and Nelson Partners Property Management, Inc. (collectively, the "Nelson Parties") are presently under a temporary restraining order of the 98th Judicial District Court of Travis County, Texas requiring them to pay $14.67 million into the court's registry. The injunction included, among other things, funds designed as "Principal buy down to SP 180 Fund,

---

[2] DB Auraria reserves its rights to object to the procedures, necessary protections, and approval of the proposed sale.

LLC," the DIP Lender in this case (the "DIP Lender"). *See* Exhibit A (Temporary Restraining Order dated November 18, 2022 and stipulated extension).[3]

6.  In response to the temporary restraining order, the Nelson Parties' counsel admitted that Nelson Partners, LLC, the Debtor's equity owner, received $3 million that was claimed to have been paid to the DIP Lender. This payment was to have come from the proceeds of the sale of another student housing property. *See* Exhibit B (email from Nelson Parties counsel). In other words, the Debtor's owner sold one of its remaining properties, stated that it was paying the DIP Lender $3 million of the proceeds, and then paid those proceeds to Nelson Partners instead. Now the Debtor's owner is under an injunction to pay the money into a court's registry, not to the DIP Lender.

7.  The Nelson Parties' counsel also indicated that the Nelson Parties were unable to make the ordered $14.67 million payment into the Texas court's registry. *Id*. Mr. Nelson, Nelson Partners, and Nelson Partners Property Management—the Debtor's ultimate owner, its immediate owner, and property manager—are now subject to a pending motion for criminal contempt (the "Criminal Contempt Motion"). *See* Exhibit C (Criminal Contempt Motion). A hearing on the Criminal Contempt Motion is currently set for December 21.  The foregoing events relating to the Debtor and its affiliates would seem to be material information that creditors voting on the Plan would want to know about. The Amended Disclosure Statement should therefore include a recitation of these events, including what occurred at the December 21 hearing.

8.  Furthermore, because the Debtor's owners and property manager are now enmeshed in criminal and civil contempt proceedings, and have professed an inability to repay $14.67 million as ordered by a court, creditors in this case should be rightfully skeptical as to whether the DIP Lender will have $1 million by March. The Amended Disclosure Statement should provide sufficient information to show how and when this crucial loan will be funded and the financial ability of the DIP Lender to fund its commitment. As a practical matter, it makes little sense to go forward on the Debtor's Plan until this issue is clarified.

9.  **Financial Projections Showing Liquidation.** The new Financial Projections do not provide liquidation scenario information that courts traditionally require in a debtor's

---

[3] The Texas court granted the temporary restraining order against Mr. Nelson and the Nelson Parties upon a liquidating plan trustee's claim that the Nelson Parties had misappropriated over $14 million in proceeds from the sale of a student housing property in violation of a court-approved plan of liquidation. In the course of the hearing on the temporary restraining order, Judge Karin Crump admonished counsel for Mr. Nelson, Nelson Partners, and Nelson Partners Property Management Company, *"It certainly appears to me that there has been some really highly improper behavior by your clients, and we'll have to get to the bottom of it when you-all are back before me…."* Exhibit D, at 47 (emphasis supplied). After considering jurisdictional issues, the court told Mr. Nelson's lawyer, "We will figure it out; we will freeze accounts, should we need to do that, so you need to have a real long and hard and serious conversation with your client, again, about what's happening before this Court. It doesn't look good, I can assure you that." *Id.* at 47-48.

disclosure statement. *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) ("Case law holds that in order to provide adequate information, the disclosure statement must contain a liquidation analysis which compares the proposed plan of reorganization with a Chapter 7 liquidation"); *In re EBP, Inc*., 172 B.R. 241, 246 (Bankr. N.D. Ohio 1994) ("Pursuant to § 1125(a), the Debtor is required to provide, in a disclosure statement, adequate information that would enable a hypothetical reasonable investor typical of holders of claims of interest to make an informed judgment about the plan. 11 U.S.C. § 1125(a). Such adequate information requires that a liquidation analysis be provided. A liquidation analysis enables creditors to test the proposed plan to see if it meets the requirements of § 1129 and any other requirements personal to the creditor."). This should have been part of the Amended Disclosure Statement and, since it was not, it should be included now.

10.    **Sale Costs.** The Debtor's Financial Projections in the Amended Disclosure Statement also do not show (a) whether transfer taxes will be applicable to the sale and paid, (b) what the sale costs will be, including commissions, and (c) what United States Trustee fees will have to be paid upon the distribution of sale proceeds. The projections should be amended to reflect that information. If the Debtor will seek to save money on transfer taxes pursuant to Section 1146(a) of the Bankruptcy Code because the sale is being made under the Plan, the Amended Disclosure Statement should so state and, in that context, confirm that a sale consummated six months after the projected effective date of the Plan is according to the Debtor, made "under the plan."

11.    **Other Absent Items.** The new Financial Projections do not account for real estate taxes that will come due in April. The Financial Projections also do not include any estimate for professional fees, of which $450,000 of the DIP Loan is allocated. These missing items result in an overstated estimate of the Debtor's finances. The Financial Projections should be revised accordingly to reflect these predictable costs.

## CONCLUSION

For the foregoing reasons, DB Auraria respectfully requests an order denying approval of the Disclosure Statement until the objections set forth above are adequately addressed.

December 19, 2022

*/s/  Jonathan W. Jordan*
KING & SPALDING LLP
Jonathan W. Jordan
Brooke L. Bean
1180 Peachtree Street, 35th Floor
Atlanta, Georgia 30309
(404) 572-4600
jjordan@kslaw.com

CHIPMAN GLASSER, LLC
Daniel W. Glasser, No. 37716
2000 S. Colorado Boulevard
Tower One, Suite 7500
Denver, CO 80222
(303) 578-5780
dglasser@chipmanglasser.com

*Attorneys for DB Auraria LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of December, 2022, I served via CM/ECF a true and correct copy of **DB AURARIA'S OBJECTIONS TO DEBTOR'S MODIFIED DISCLOSURE STATEMENT** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED R. BANKR. P. and the L.B.R. at the following addresses:

Michael J. Pankow
Amalia Y Sax-Bolder
Anna-liisa Mullis
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th St. 22nd Fl.
Denver, CO 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
Email: mpankow@bhfs.com
Email: asax-bolder@bhfs.com
Email: amullis@bhfs.com
*Attorney for Debtor 5280 Auraria, LLC*

Jonathan W. Jordan
Sarah R. Borders
Brooke L. Bean
KING & SPALDING LLP
1180 Peachtree Street, 35th Floor
Atlanta, Georgia 30309
Phone: (404) 572-4600
Fax: (404) 572-5135
Email: jjordan@kslaw.com
Email: sborders@kslaw.com
Email: bbean@kslaw.com
*Attorneys for Creditor DB Auraria LLC*

Matthew T. Faga
MARKUS WILLIAMS YOUNG AND HUNSICKER LLC
1775 Sherman Street, Suite 1950
Denver, Colorado 80203
Phone: (303) 830-0800
Fax: (303) 830-0809
Email: mfaga@markuswilliams.com
*Attorney for Receiver Cordes & Company LLP*

Kyler Burgi
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Phone (303) 892-9400
Fax: (303) 893-1379
Email: kyler.burgi@dgslaw.com
*Attorneys for Executive Tower Condominium Association, Inc*

Bradford E. Dempsey
FAEGRE DRINKER BIDDLE & REATH LLP
1144 15th Street, Suite 3400
Denver, CO 80202
Phone: (303) 607-3500
Fax: (303) 607-3600
brad.dempsey@faegredrinker.com
*Attorney for Auraria Stub LLC*

Paul Moss
Byron G. Rogers Federal Building
1961 Stout St. Ste. 12-200
Denver, CO 80294
Phone: (303) 312-7995
Fax: (303) 312-7259
Email: Paul.Moss@usdoj.gov
*Attorney for United States Trustee*

David M. Miller
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Phone: (303) 839-3800
Fax: (303) 839-3838
Email: dmiller@spencerfane.com
*Attorney for Denver 14th St. General Improvement District, LLC*

*/s/ Daniel W. Glasser*
Daniel W. Glasser

I further certify that on the 19th day of December, 2022, I served via mail a true and correct copy of **DB AURARIA'S OBJECTIONS TO DEBTOR'S MODIFIED DISCLOSURE STATEMENT** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED R. BANKR. P. and the L.B.R. at the following addresses:

Colliers International Denver
4643 S. Ulster Street
 #1000
Denver, Co 80237

Aia Katherine Norton
1355 York Street
Unit 30
Denver, CO 80206

Jarbrel Dorsett
4373 E. Utah Place
Denver, 80202

Elise Esmond
4373 E. Utah Place
Denver, CO 80222

*/s/ Daniel W. Glasser*
Daniel W. Glasser