UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:

5280 AURARIA, LLC
EIN: 84-3301286,

Debtor.

Case No. 22-12059-KHT

Chapter 11

**MOTION TO RECONSIDER (I) ORDER DENYING PLAN CONFIRMATION AND (II) ORDER GRANTING RELIEF FROM AUTOMATIC STAY PURSUANT TO FED. R. BANKR. P. 9023 AND FED. R. CIV. P. 59(e)**

5280 Auraria, LLC (the "**Debtor**"), the debtor in the above-captioned case, by and through its undersigned counsel, submits this Motion to Reconsider (the "**Motion**") requesting that the Court reconsider (I) the Court's Order (Docket No. 831) (the "**Plan Order**") denying confirmation of the Debtor's Second Amended Plan of Reorganization, as Modified February 1, 2024 (Docket No. 723) (the "**Plan**") and (II) the Order on Motion for Relief from Stay (Docket No. 832) (the "**Stay Relief Order**") pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e). In support of this Motion, the Debtor respectfully states as follows:

1. Motions for reconsideration and clarification are permitted under Rule 59(e) of the Federal Rules of Civil Procedure, which applies to this contested matter through Bankruptcy Rule 9023. A motion to reconsider a judgment is to be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Gregg v. Am. Quasar Petroleum Co.*, 840 F. Supp. 1394, 1401 (D. Colo. 1991). Grounds warranting a motion to reconsider include the need to correct clear error or prevent manifest injustice. *See Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). Reconsideration has been determined to be appropriate when the Court has misapprehended a party's position, the facts, or the law. *See Servants of Paraclete*, 204 F.3d at 1012; *Am. Quasar Petroleum Co.*, 840 F. Supp. at 1401; *Foutty v. Equifax Servs., Inc., a Div. of Equifax, Inc.*, 764 F. Supp. 621, 622 (D. Kan. 1991).

2. The Plan Order has several specific aspects at variance with the record in this case, correction of which is necessary to prevent manifest injustice. These are set forth briefly below. The Debtor respectfully submits that entry of final orders denying plan confirmation and lifting the stay are in error. The Debtor requests that the Court alter or amend its findings in the respects outlined below and make such additional findings as may be necessary to fully address compliance with section 1129(b) as a result.

**Negative Amortization is Not Necessary**

3. The Plan Order rejected the Plan's proposal for a negative amortization feature. Negative amortization, however, is not required at this point in time. As Exhibit 39 shows, the Debtor has sufficient cash to make interest payments through the end of the year, as proposed under the Plan. A copy of Exhibit 39, admitted into evidence, is attached as **Exhibit A** for the Court's convenience.

4. Ending cash as of December 31, 2024, was projected to be $467,892.82. The Court's determination of what interest payments would be required calls for two adjustments— one upward and one downward.

- *First*, one should add back in the monthly payments of $282,333.33 to DB Auraria that were projected but will not be made because the Plan had not—and has not been—confirmed to date. Payments for January through July would thus be added back into the projected ending cash balance. All other things being equal, adjustment for those payments not having been made would increase ending cash by $1,976,333.30 ($282,333.33 x 7 months), bringing the projected ending cash balance to $2,444,226.10.

- *Second*, the cash flow must account for the higher monthly interest payments found by the Court to be in the range required to comply with section 1129(b): additional interest expense consistent the range found at page 32 of the Plan Order, or $358,842 to $409,557. Since $283,333.33 is already budgeted for Plan payments for August to December, the Court's analysis results in additional monthly interest expense of $76,508.67 to $127,223.67. For the five months remaining the calendar year, the total additional interest expense would thus range from $382,543.35 to $636,118.35. This should result in a downward adjustment to ending cash balance.

5. Even accounting for the increased interest expense, the projections in Exhibit 39 with these adjustments shows ample remaining cash after all projected payments are made:

|  |  |  |
|---|---|---|
| $2,444,226.10 | to | $2,444,226.10 |
| (    382,543.35) |  | (    636,118.35) |
| **$2,061,682.80** | to | **$1,808,107.80** |

All that is required is a small tweak to the Plan.

**In Fairness, Feasibility Should be Reconsidered in Light of the Above**

6. The Court stated that DB Auraria should not bear the risk of the modest negative amortization feature that was conditionally proposed in the Plan. The Court intertwined the analysis of negative amortization with that of feasibility. (*See* Plan Order at 31 ("[A]bsent the ability to defer the unpaid interest to DB Auraria, the Modified Plan would not be feasible.").) And to be sure, the Court's analysis of ability to complete a sale or refinance would be impacted

to the extent that the balance of the secured claim grows. As established above, the balance will not grow.

7. The Court further stated that the Debtor "did not provide any evidence concerning the marketability or salability of the Real Property." (Plan Order at 22.) In addition to appraisal evidence, DB Auraria admitted that the Property was on a positive trend line. *See DB Auraria's Closing Brief In Opposition to Confirmation* (Docket No. 773) at 9–10. Moreover, the Debtor has already significantly performed, having renovated the Property, improved rent revenue performance over the course of the case, and is deferring repayment of the DIP loan. These accomplishments prepared the Debtor for performance under the Plan. In addition, a broker was retained, prepared to commence active efforts at the time the Plan Order was entered.

8. The only party that objected to feasibility is DB Auraria. DB Auraria has its foreclosure rights, and its secured claim balance will not grow. All other parties in interest supported confirmation of the Plan.

**The Court's Ruling on Section 1129(a)(5)(B) Should be Reconsidered.**

9. The Court denied Plan confirmation, in part, based on section 1129(a)(5)(B), requiring disclosure of the nature of compensation to insiders. No party, not even DB Auraria with its vociferous objections, alleged noncompliance with section 1129(a)(5)(B). DB Auraria challenged compliance with section 1129(a)(5)(A)(ii) but not section 1129(a)(5)(B). *See* Docket No. 601 at 19. To counsel's recollection, neither the Court nor DB Auraria raised this issue at hearing. The Court's concern as to the adequacy of disclosure in this regard comes as a surprise.

10. Mr. Nelson is not an employee of the Debtor. *See In re Midway Gold US, Inc.*, 575 B.R. 475, 493 (Bankr. D. Colo. 2017) (Sections 1129(a)(5) and (6) do not apply to the Plan because no officers and directors are being appointed. . . .).

11. Moreover, the Plan expressly provides for assumption of the underlying property management agreement. The Disclosure Statement provides for no changes to the prepetition compensation, except that arrearages under the agreement will be treated as a General Unsecured Claim without a cure payment pursuant to Section 365(b). *See Second Amended Disclosure Statement to Accompany Debtor's Modified Second Amended Plan of Reorganization* (Docket No. 543) at 28. The Disclosure Statement was approved by the Court after extensive hearings and input from DB Auraria itself. *See* Docket Nos. 522, 523, 526, 550, 556.

12. The Debtor's financial projections also expressly contain a line item for "Property Management Fees." *See* Ex. A (Exhibit 39 – Financial Projections).

13. The Court seems concerned about Mr. Nelson's testimony that he has made profits off commissions on sales of property in the past, but there is no evidence in the record that Mr. Nelson is seeking a commission under the Plan and the Plan does not expressly provide for one. Because there is no commission to be paid to Nelson Partners under the Plan, the Plan cannot be faulted for not disclosing the amount of a commission that does not exist.

30504702

12. Creditors voted in favor of the Plan, except for DB Auraria.

13. Disclosure was made in the record regarding the nature of compensation. Neither the disclosure nor the underlying compensation was the subject of objection. Of course, if the Court had questions based upon the disclosures, it was and is entitled to answers. But the Debtor must in fairness be given an opportunity to answer or address the questions through supplemental evidence or otherwise. *See In re Polytherm Indus., Inc.*, 33 B.R. 823, 829 (Bankr. W.D. Wis. 1983) (remand where plan did not comply with section 1129(a)(5)(B) but open question remained).

14. To deny plan confirmation and grant relief from stay outright because the Debtor did not anticipate a question based upon an uncontested element, without an opportunity to otherwise address the question, would result in surprise and manifest injustice. *See Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

**The Court Should Reconsider the Lift Stay Order**

15. Shortly after the Court entered the Plan Order, the Court entered the Lift Stay Order in accordance with its ruling in the Plan Order that having determined that the Plan cannot be confirmed, DB Auraria is entitled to relief from the automatic stay under the SARE provisions of § 362(d)(3). The Court found that the Debtor's failure to confirm a chapter 11 plan warranted relief from stay under section 362(d)(3)(A). For the reasons set forth above, the Plan is confirmable.

16. In its written closing argument, the Debtor requested an opportunity to modify the Plan after the Court provides guidance and provided examples of cases where that occurred (none requiring resolicitation). Section 362(d)(3) does not prohibit such a procedure.

17. In granting relief from stay without an opportunity to modify the Plan or address open questions, the Court stated this about the procedural history of the case:

> This case was filed in June 2022. It has been two years since the Debtor commenced its chapter 11 bankruptcy case. As the record before the Court indicates, the Debtor has had ample time and ample opportunities to put before the Court and creditors a plan of reorganization that had a reasonable possibility of being confirmed. The Debtor chose not to seek confirmation of several versions of a plan. . . .

(Plan Order at 35.)

18. This statement reflects a fundamental misapprehension of the record in this case—specifically regarding confirmation a plan. The Debtor has had only **one** opportunity to confirm a plan in this case. Moreover, the Debtor caused no material delay in any plan confirmation process.

19. The plan confirmation hearings at the beginning of this year were the only plan confirmation hearings held in this case. There was only one other confirmation hearing even scheduled. That hearing was in September 2023—10 months ago—on the same fundamental version of the plan upon which the Court ruled in the Plan Order. **That hearing was vacated,** *sua*

*sponte*, **due solely to DB Auraria's deliberate discovery misconduct**. *See* Docket Nos. 586, 590, 591.

20. The only changes to the Plan since then were in response to objections or events subsequent to the originally scheduled plan confirmation hearing.

21. The Debtor did not request a single other delay in connection with the Plan, except for a one business day extension on a post-trial brief. *See* Docket Nos. 782, 783.

22. Nor did the Debtor choose not to proceed with multiple versions of a plan. Instead it made one basic change in approach that should not have resulted in any delay. In hearings in May 2023, the Debtor announced in connection with scheduling that it was considering a modified plan—in response to market conditions and DB Auraria's continued fighting over the original sale plan concept. To ensure that no delay would result, the Court set a deadline of June 16, 2023 to file that Plan. *See* Docket No. 432. The Debtor timely filed a modified plan (Docket No. 451) such that the plan confirmation process should not have been delayed by one extra day as a result.

23. Accordingly, the Debtor requests that the Lift Stay Order be reconsidered pending confirmation of the Plan.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order, substantially in the form attached hereto, vacating the Plan Order, vacating the Lift Stay Order, confirming the Plan, and granting such other and further relief as may be just and proper.

Dated this 2nd day of August, 2024.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

*/s/ Michael J. Pankow*
Michael J. Pankow, #21212
Amalia Y. Sax-Bolder, #54959
675 15th Street, Suite 2900
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
mpankow@bhfs.com
asax-bolder@bhfs.com

*Attorneys for the Debtor*

# CERTIFICATE OF SERVICE

  I hereby certify that on this 2nd day of August, 2024, I electronically filed the foregoing **MOTION TO RECONSIDER (I) ORDER DENYING PLAN CONFIRMATION AND (II) ORDER GRANTING RELIEF FROM AUTOMATIC STAY PURSUANT TO FED. R. BANKR. P. 9023 AND FED. R. CIV. P. 59(e)** via the Court's CM/ECF filing system and notice of the filing was served in accordance with applicable Fed. R. Bankr. P. and L.B.R. on the following:

- **Kyler Burgi** kyler.burgi@dgslaw.com, paige.finnell@dgslaw.com
- **Matthew T. Faga** mfaga@markuswilliams.com, janderson@markuswilliams.com; docket@markuswilliams.com;sschaefer@markuswilliams.com
- **Daniel Glasser** DGlasser@chipmanglasser.com, Cberrier@chipmanglasser.com;jmcdaniel@chipmanglasser.com
- **Kyle R. Hosmer** kyle.hosmer@faegredrinker.com, dorothy.bailey@faegredrinker.com
- **Jon W. Jordan** jjordan@kslaw.com
- **Roger Abraham Maldonado** roger.maldonado@faegredrinker.com
- **David M. Miller** dmiller@spencerfane.com, kdominguez@spencerfane.com;david-miller-7513@ecf.pacerpro.com
- **Aia Katherine Norton** princessaiak@gmail.com
- **Jennifer M. Osgood** josgood@chipmanglasser.com
- **Michael J. Pankow** mpankow@bhfs.com, aciabattoni@bhfs.com
- **Benjamin Sales** benjamin.a.sales@usdoj.gov
- **Amalia Y Sax-Bolder** asax-bolder@bhfs.com, aciabattoni@bhfs.com
- **US Trustee** USTPRegion19.DV.ECF@usdoj.gov

               */s/ Genie Passow*
               Genie Passow, Legal Practice Assistant

30504702